1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8
9
10
11
12
13

PATRICIA BARRETT,                )   No. 4:15-CV-5109-LRS
                                 )
            Plaintiff,            )   **ORDER GRANTING**
                                 )   **PLAINTIFF'S MOTION FOR**
      vs.                        )   **JUDGMENT,** ***INTER ALIA***
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,                        )
                                 )
            Defendant.            )
_____  )

14    **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment

15   (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 19).

16

17                              **JURISDICTION**

18        Patricia Barrett, Plaintiff, applied for Title II Disability Insurance benefits

19   (DIB) and Title XVI Supplemental Security Income benefits (SSI) on June 3, 2011.

20   The applications were denied initially and on reconsideration.  Plaintiff timely

21   requested a hearing which was held on March 6, 2014 before Administrative Law

22   Judge (ALJ) Marie Palachuk.  At the hearing, Plaintiff amended her disability onset

23   date to June 3, 2011, thereby making her SSI claim her only claim for benefits.

24   Plaintiff testified at the hearing, as did medical expert Donna Veraldi, a psychologist,

25   and Vocational Expert (VE) Diane Kramer.  On March 28, 2014, the ALJ issued a

26   decision finding the Plaintiff not disabled.  The Appeals Council denied a request for

27   review of the ALJ's decision, making that decision the Commissioner's final decision

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1  subject to judicial review.  The Commissioner's final decision is appealable to district

2  court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

3

4  ### STATEMENT OF FACTS

5      The facts have been presented in the administrative transcript, the ALJ's

6  decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.  At

7  the time of the administrative hearing, Plaintiff was 56 years old.  She has past

8  relevant work experience as an apartment manager, baker helper, fast food worker

9  and child care attendant.  Plaintiff alleges disability since June 3, 2011, on which date

10  she was 53 years old.

11

12  ### STANDARD OF REVIEW

13      "The [Commissioner's] determination that a claimant is not disabled will be

14  upheld if the findings of fact are supported by substantial evidence...." *Delgado v.*

15  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere

16  scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

17  than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

18  *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.

19  1988).  "It means such relevant evidence as a reasonable mind might accept as

20  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91

21  S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may

22  reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457

23  F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

24  On review, the court considers the record as a whole, not just the evidence supporting

25  the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.

26  1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

27  ///

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1    It is the role of the trier of fact, not this court to resolve conflicts in evidence.

2  *Richardson*, 402 U.S. at 400.    If evidence supports more than one rational

3  interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749

4  F.2d 577, 579 (9th Cir. 1984).

5    A decision supported by substantial evidence will still be set aside if the proper

6  legal standards were not applied in weighing the evidence and making the decision.

7  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.

8  1987).

9  **ISSUES**

10    Plaintiff argues the ALJ  erred in:  1) evaluating the opinions of Dr. Chau,

11  M.D., and Dr. Prakash, M.D. 2) discounting Plaintiff's credibility; and 3) finding that

12  Plaintiff could perform her past relevant work as an apartment manager.

13

14  **DISCUSSION**

15  **SEQUENTIAL EVALUATION PROCESS**

16    The Social Security Act defines "disability" as the "inability to engage in any

17  substantial gainful activity by reason of any medically determinable physical or

18  mental impairment which can be expected to result in death or which has lasted or can

19  be expected to last for a continuous period of not less than twelve months."  42

20  U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined

21  to be under a disability only if her impairments are of such severity that the claimant

22  is not only unable to do her previous work but cannot, considering her age, education

23  and work experiences, engage in any other substantial gainful work which exists in

24  the national economy.  *Id*.

25    The Commissioner has established a five-step sequential evaluation process for

26  determining whether a person is disabled.  20 C.F.R. § 416.920; *Bowen v. Yuckert*,

27  482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines if she is engaged

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

in substantial gainful activities.   If she is, benefits are denied.   20 C.F.R. § 416.920(a)(4)(i).   If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.   If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.   If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.   20 C.F.R. § 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.   20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.   The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments consisting of major depressive disorder, mild to moderate; anxiety; osteoarthritis of the bilateral hands and bilateral knees; and mild obesity; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(a) with lifting and carrying of 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk about 6 hours in an 8 hour workday and sit for about 6 hours in an 8 hour workday; pushing and pulling is unlimited; her performance of postural activities (climbing, balancing, stooping, kneeling, crouching or crawling) is limited to "occasional;" she is able to understand, remember and carry out simple, routine, and repetitive tasks and instructions, and learn detailed tasks; she is capable of only occasional contact with the general public; and 4) Plaintiff's RFC allows her to perform her past relevant work as an apartment manager. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**PHYSICIAN OPINIONS/CREDIBILITY**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory,

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 5**

1
2
and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

3
4
5
6
7
8
Plaintiff saw Wing C. Chau, M.D., on August 5, 2008 for a "Disability Impairment Evaluation." Dr. Chau's musculoskeletal examination revealed "mild osteoarthritic changes of both knees." (Administrative Record (AR) at p. 402). He noted that Plaintiff was "able to ambulate up on her toes and heels." (AR at p. 403). Dr. Chau opined that Plaintiff's radiological study supported "early osteoarthritic changes at several joints[,] including the knees." (AR at p. 403). He further opined:

9
10
11
12
> She was felt to be capable of at least light duty work with carrying and lifting up to 10 [pounds] . . . . The patient should have a job that allows her to sit and stand as tolerated. She should have medical benefits to delay progression of osteoarthritis as well as treat her for diabetes and hypertension.

13
(AR at p. 403).

14
15
16
17
18
19
20
21
22
23
Plaintiff was seen by S. Prakash, M.D., at Tri-Cities Community Health, on December 21, 2010. He completed a Washington Department of Social & Health Services (DSHS) "Physical Evaluation" form in connection with Plaintiff's application for state disability benefits. Dr. Prakash concluded that Plaintiff had "moderate to severe DJD [Degenerative Joint Disease] of knee" which significantly interfered with abilities to stand, walk, lift, handle and carry. (AR at p. 444). He further concluded Plaintiff was limited to "sedentary" work, defined as lifting 10 pounds maximum, frequently lifting and/or carrying such articles as files and small tools, and potentially requiring sitting, walking and standing for brief periods. (AR at p. 444). He opined that Plaintiff was in need of an orthopedic evaluation for the degenerative joint disease in her knees. (AR at p. 445).

24
25
26
27
28
Approximately one month earlier (November 2010), a radiological exam of Plaintiff's knees taken at the Lourdes Medical Center in Pasco indicated "[b]ilateral symmetric moderate osteoarthritic change with moderate suprapatellar effusions." (AR at p. 460). "Three views of . . . each knee including weightbearing view

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

demonstrate[d] moderate-to-severe joint space loss at the medial compartments bilaterally and fairly symmetrically." (AR at p. 460).

Plaintiff returned to Dr. Chau for another "Disability Impairment Evaluation" on December 22, 2011. Dr. Chau noted that the November 2010 radiological exam had reported moderate degenerative arthritis of both knees. (AR at p. 471). He opined that Plaintiff was "capable of full time work at a sedentary-light duty work (sic) where she is not required to do [a] significant amount of walking or lifting, as her degenerative condition will likely worsen over time." (AR at p. 472).

The ALJ gave only "some weight" to Dr. Chau's 2008 opinion because it predated the amended alleged onset date of June 3, 2011 by three years. (AR at p. 31). Likewise, the ALJ gave only "some weight" to Dr. Chau's 2011 opinion, asserting there was "no evidence" that Plaintiff's condition had "significantly worsened" since Dr. Chau's 2008 opinion. (AR at p. 31). According to the ALJ, "[x]-rays of the thoracic and lumbar spine . . . are with 'minimal' to 'mild' degenerative changes only, and the physical exam at the time was without neurological or other findings to support the more restrictive residual functional capacity given by Dr. Chau." (AR at p. 31). Instead, the ALJ gave "significant weight to the opinion of the non-examining state agency medical consultant, Olegario Ignacio, Jr., M.D., who opined . . . that the claimant was capable of a wide range of light exertion with postural limitations at occasional." (AR at p. 31 and pp. 105-07). Dr. Ignacio indicated he had considered the two reports of Dr. Chau from 2008 and 2011, the findings of which "indicated reasonable ROM [range of motion], 5/5 strength and minimal imaging findings." (AR at p. 106). Dr. Ignacio further indicated that Dr. Chau's assessments "are adopted as modified in this RFC." (AR at p. 106).

It is apparent that what Dr. Ignacio and, in turn, the ALJ failed to acknowledge was the worsening in the degenerative joint disease in the Plaintiff's knees as

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

confirmed by x-ray evidence.  The ALJ mentioned only the x-rays of the thoracic and lumbar spine and there is no indication that Dr. Ignacio considered the x-rays showing moderate degenerative arthritis of both of Plaintiff's knees.  As such, it was improper to give "significant weight" to the opinion of Dr. Ignacio and only "some weight" to the opinion of Dr. Chau.  Furthermore, it was improper of the ALJ to accord "no weight" to the evaluation of Dr. Prakash (AR at p. 32) who opined that Plaintiff had moderate to severe degenerative joint disease in the knees just one month after x-rays showed "each knee including weightbearing view demonstrate[d] moderate-to-severe joint space loss at the medial compartments bilaterally and fairly symmetrically."  In sum, the ALJ did not offer "specific and legitimate" reasons for discounting the opinions of Drs. Chau and Prakash.  The opinion of a non-examining physician such as Dr. Ignacio cannot, by itself, constitute substantial evidence that justifies rejection of the opinion of an examining or a treating physician.  *Lester*, 81 F.3d at 831.

Interestingly enough, although the ALJ failed to acknowledge that Plaintiff's degenerative condition in her knees had worsened, the ALJ did acknowledge in her decision that "[Plaintiff] does have moderate degenerative arthritis of both knees . . . but on exam . . . she was able to ambulate without assistance, and walk on heels and presumably toes."  (AR at p. 30).  This statement cited to the x-ray examination of November 2010 and to Dr. Chau's December 2011 examination.  While it is true that Dr. Chau indicated Plaintiff was able during the December 2011 examination to "walk on the heels and the ankles" (presumably intending to refer to toes instead of ankles), it is also true that the osteoarthritis in Plaintiff's knees had worsened since 2008.  This led Dr. Chau to opine that Plaintiff was now capable of full time work at a "sedentary-light duty" level, whereas in 2008, he had opined she was capable of light duty work.

The ALJ found Plaintiff was only "partially credible" (AR at p. 30), but there

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

1   is no statement or testimony by the Plaintiff which clearly and convincingly is at odds

2   with Dr. Chau's 2011 functional capacity assessment.  Where, as here, the Plaintiff

3   has produced objective medical evidence of an underlying impairment that could

4   reasonably give rise to some degree of the symptoms alleged, and there is no

5   affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's

6   testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th

7   Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014).  It is true Plaintiff

8   did not list any prescription medications in the form she completed for the SSA Office

9   of Hearings and Appeals on March 6, 2014 (AR at p. 503), but elsewhere in the

10  medical record, there is an indication that she had been taking medications, including

11  ibuprofen.  (AR at pp. 312, 470, 483-84 and 490).

12          The daily living activities testified to by Plaintiff are not inconsistent with Dr.

13  Chau's 2011 functional capacity assessment.  "The Social Security Act does not

14  require that claimants be utterly incapacitated to be eligible for benefits . . . and many

15  home activities are not easily transferable to what may be the more grueling

16  environment of the workplace where it might be impossible to periodically rest or

17  take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he mere fact

18  that a plaintiff has carried on certain daily activities, such as grocery shopping,

19  driving a car, or limited walking for exercise, does not in any way detract from

20  credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th

21  Cir. 2001).  Rather, "[i]t is only where the level of activity is inconsistent with a

22  claimed limitation that the activity has any bearing on credibility." *Id*.  Daily

23  activities therefore "may be grounds for an adverse credibility finding if a claimant

24  is able to spend a substantial part of h[er] day engaged in pursuits involving physical

25  functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639

26  (9th Cir. 2007).  To conclude that a claimant's daily activities warrant an adverse

27  credibility determination, the ALJ must make specific findings relating to the daily

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 9**

activities and the transferability of the activities to the workplace. *Id*. Here, the ALJ did not make such findings.

The record leaves one wondering exactly what Dr. Chau intended by his reference to "sedentary-light duty." His comments as a whole, and the other evidence in the record, however, lead the court to conclude that he intended "sedentary" duty more than he intended "light" duty. "Light" work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. 20 C.F.R. §416.967(b). And even when the weight lifted is "very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. In 2008, Dr. Chau indicated that Plaintiff was capable of lifting and carrying up to 10 pounds. (AR at p. 403). A 10 pound maximum is consistent with "sedentary" work. 20 C.F.R. §416.967(a). In 2011, he indicated that Plaintiff should not be "required to do [a] significant amount of walking or lifting." This too is more in line with "sedentary" work, rather than "light" work. A "sedentary" job involves sitting, although walking and standing are "required occasionally." 20 C.F.R. §416.967(a).

**PAST RELEVANT WORK**

At step four, the claimant has the burden to prove she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). The Dictionary of Occupational Titles (DOT) is "the best source for how a job is generally performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). It is error of an ALJ to classify an occupation "according to the least demanding function." *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985).

The VE testified that per the DOT, the job of apartment manager is classified as involving "light" exertion. (AR at p. 55). Plaintiff testified that in her capacity as

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

an apartment manager, she "did paperwork, showed apartments [and] took care of the maintenance." (AR at p. 48). She testified that she had a maintenance crew and a cleaning crew. (AR at p. 48). The VE testified that "personally" she did not think the job actually involved "light" exertion as set forth in the DOT unless there was lifting involved. (AR at p. 58). The VE testified it was her experience that the job usually fell within the sedentary range (doing paperwork and showing apartments) as suggested by Plaintiff's testimony that she had a maintenance crew and a cleaning crew. (AR at p. 58).

In the "Work History Report" she completed on July 5, 2011, Plaintiff indicated her apartment manager job entailed walking four hours each day. (AR at p. 282). This is more than "occasional" and constitutes a "good deal" of walking which is consistent with "light" exertion. It is "significant" walking which Dr. Chau indicated Plaintiff cannot tolerate because of the worsening osteoarthritic condition in her knees. As actually performed by Plaintiff, her job as an apartment manager constituted "light" work, consistent with how it is generally performed in the national economy per the DOT. There is not substantial evidence in the record supporting the ALJ's conclusion that Plaintiff could perform her past work as an apartment manager as generally performed in the national economy or as actually performed by Plaintiff. Plaintiff met her step four burden of establishing she cannot perform any of her past relevant work.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

1  investigation or explanation." *Treichler v. Commissioner of Social Security*
2  *Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co.*
3  *v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

4          In "rare circumstances," the court may reverse and remand for an immediate
5  award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g).
6  Three elements must be satisfied in order to justify such a remand. The first element
7  is whether the "ALJ has failed to provide legally sufficient reasons for rejecting
8  evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting
9  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the
10 second element is whether there are "outstanding issues that must be resolved before
11 a determination of disability can be made," and whether further administrative
12 proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882,
13 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual
14 issues have been resolved, a remand for an award of benefits is inappropriate." *Id.*
15 Finally, if it is concluded that no outstanding issues remain and further proceedings
16 would not be useful, the court may find the relevant testimony credible as a matter of
17 law and then determine whether the record, taken as a whole, leaves "not the slightest
18 uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-*
19 *Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied-
20 ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are
21 no outstanding issues that must be resolved, and there is no question the claimant is
22 disabled- the court has discretion to depart from the ordinary remand rule and remand
23 for an immediate award of benefits. *Id.* But even when those "rare circumstances"
24 exist, "[t]he decision whether to remand a case for additional evidence or simply to
25 award benefits is in [the court's] discretion." *Id.* at 1102, quoting *Swenson v.*
26 *Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).
27 ///
28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

Here, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Drs. Chau and Prakash and for rejecting Plaintiff's testimony. Outstanding issues remain, however, which must be resolved at step five of the sequential evaluation process. At the time of the alleged onset date of her disability (June 3, 2011), Plaintiff was 53 years of age which constitutes "closely approaching advanced age." In her hypothetical to the VE, the ALJ asked the VE to assume Plaintiff was "approaching the advanced age category" and had a "limited" education. (AR at p. 56).[1] Assuming Plaintiff had an RFC for the full range of sedentary work on June 3, 2011, the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. § 404, Subpart P, App. 2, would dictate a finding of disability as of that date provided Plaintiff's previous work experience was unskilled or none, or skilled or semi-skilled with the skills not transferable. Rules 201.09 and 201.10.[2] According to the VE, Plaintiff's previous work as an apartment manager was skilled work, and her previous work as a baker helper was semi-skilled work. (AR at p. 55). The court cannot simply assume the skills obtained in these jobs are not transferable so as to permit use of the grids and find the Plaintiff "disabled."

_____

[1] A 7th through 11th grade level of formal education is considered to be "limited education." 20 C.F.R. § 416.965(b)(3).

[2] Plaintiff had reached the "advanced age" category (55 older) at the time of her administrative hearing in March 2014. In that category, Rules 201.01 and 201.02 would dictate the same result as Rules 201.09 and 201.10.

Plaintiff's counsel suggests Plaintiff's education is "high school graduate or more." Depending on Plaintiff's age, Rules 201.04, 201.06, 201.12 and 201.14 would dictate a finding of disability if Plaintiff's previous work experience was unskilled or none, or skilled or semiskilled with the skills not transferable, and her high school graduation did not provide for direct entry into skilled work.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 13**

1    This case will be remanded for a determination at step five whether Plaintiff

2    is capable of performing any other work in the national economy that is allowed by

3    her RFC.  For the purposes of remand, the Plaintiff's physical RFC is assumed to be

4    no more than the full-range of sedentary work, but the record as it currently exists and

5    as further developed on remand, may justify a different conclusion precluding use of

6    the grids (i.e., physical RFC less than the full range of sedentary work and/or

7    presence of significant non-exertional limitations).[3]

8

9                                    **CONCLUSION**

10       Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and

11   Defendant's Motion For Summary Judgment (ECF No. 19) is **DENIED**.  The

12   Commissioner's decision is **REVERSED**.  Pursuant to sentence four of 42 U.S.C.

13   §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for

14   further proceedings to ascertain whether Plaintiff is disabled at step five of the

15   sequential evaluation process.  An application for attorney fees may be filed by

16   separate motion.

17       **IT IS SO ORDERED.**   The District Executive shall enter judgment

18   accordingly and forward copies of the judgment and this order to counsel of record.

19       **DATED** this ___27th___ day of October, 2016.

20

21                               *s/Lonny R. Suko*

22                         _____

23                               LONNY R. SUKO
                               Senior United States District Judge

24

25

26   _____

27       [3] As noted, in 2008, Dr. Chau indicated Plaintiff should do work allowing
     her to sit or stand at will.

28   **ORDER GRANTING PLAINTIFF'S**
     **MOTION FOR SUMMARY JUDGMENT- 14**